United States District Court
District of Massachusetts

|  |  |
|---|---|
| George P. Johnson Hong Kong Ltd.,<br><br>Plaintiff,<br><br>v.<br><br>L.E.K. Consulting LLC<br><br>Defendant. | Civil Action No.<br>20-11269-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff George P. Johnson Company Hong Kong Ltd. ("GPJ" or "plaintiff") brings suit against L.E.K. Consulting LLC ("L.E.K." or "defendant") for breach of contract and breach of the implied covenant of good faith and fair dealing. Pending before the Court is defendant's motion to dismiss for failure to state a claim. For the reasons that follow, that motion will be denied.

**I.   Background**

GPJ is a Hong Kong-based, event-planning firm and L.E.K. is a global consulting company with its principal place of business in Boston, Massachusetts. In early 2019, L.E.K. contacted GPJ for assistance in planning and conducting a global management conference ("the Conference") to be hosted by L.E.K in Hong Kong

in March, 2020. GPJ alleges that the parties ultimately executed a contract memorializing GPJ's role as the Conference planner. The negotiations with respect to and the terms of the purported contract are summarized below.

GPJ avers that, in March, 2019, a manager of L.E.K. contacted GPJ to assist L.E.K. in securing a venue and amenities for the Conference. GPJ contends that it subsequently negotiated a proposal with a hotel in Hong Kong ("the Hotel") for the Conference which L.E.K. approved. GPJ asserts that, in April, 2019, it obtained a quote from the Hotel covering hotel rooms, meeting rooms and dinners.

After reviewing that quote, according to GPJ, an L.E.K. representative stated, "let's go to contract", in response to which GPJ sent to L.E.K. two iterations of a document entitled "Event Cost Estimate and Variance Report". The complaint contends that the final version of that document dated May 22, 2019 (Exhibit D) is a binding contract ("the purported contract") and reflects a negotiated total price of $1.6 million for accommodations and conference management services of GPJ.

The purported contract provides that 50% of the quoted price would be payable six months prior to the event (in September, 2019) and imposes the following cancellation fee provisions "if the event is cancelled by the Client":

- as of agreement confirmation date, 30% of total cost;

      - after July 31, 2019, 60% of total cost;
      - after October 30, 2019, 90% of total cost; and
      - after January 31, 2020, 100% of total cost.

According to GPJ, a representative from L.E.K. subsequently reviewed that document and, on May 29, 2019, delivered a signed copy of it to GPJ (the signed copy is attached to the complaint as Exhibit D). Approximately two months later, GPJ purportedly sent an invoice to L.E.K. for 50% of the quoted price but L.E.K. did not then and has not since made any payment.

Instead, in September, 2019, L.E.K. sent an email to GPJ expressing concern about the Conference because of the violent protests then occurring in Hong Kong.[1] It also requested and was granted by GPJ a two-week extension of the October, 2019, cancellation deadline. GPJ submits that, on November 14, 2019, L.E.K. sent to it a formal notice of cancellation, thus invoking the 60% cancellation fee due under the purported contract. According to the complaint, however, L.E.K. has refused to make any payments to GPJ.

Accordingly, in June, 2020, GPJ filed this civil action against L.E.K. in a Massachusetts Superior Court, alleging breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II). L.E.K. subsequently

---

[1] Pursuant to Fed. R. Evid. 201, the Court will take judicial notice of the extreme political unrest which has occurred in Hong Kong beginning in or about June, 2019.

removed the case to this Court on diversity jurisdiction grounds and now moves to dismiss the complaint for its failure to plead an enforceable contract.

## II. Discussion

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference

of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Application**

    **1.    Breach of Contract**

To state a claim for breach of contract under Massachusetts law, the plaintiff must allege that 1) a valid contract exists between the parties, 2) the defendant failed to perform its obligations under that contract and 3) such failure caused the plaintiff damage. See Shaulis v. Nordstrom, Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (quoting Guckenberger v. Bos. Univ., 957 F. Supp. 306, 316 (D. Mass. 1997)).

A valid contract exists if, at the time of execution, the parties 1) agreed on all of the material terms, 2) had the present intention to be bound by that agreement and 3) supported it with sufficient consideration. See Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 201 (1st Cir. 2004); Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000). The manifestation of such an agreement "generally consists of an offer by one and the acceptance of it by the other." I & R Mech., Inc. v. Hazelton Mfg. Co., 817 N.E.2d 799, 802 (Mass. App. Ct. 2004).

Here, the Court concludes that the complaint states a claim for breach of contract. First, the factual allegations permit the reasonable inference that a valid contract exists. The

complaint states specifically that, 1) after L.E.K. contacted GPJ seeking assistance in planning and conducting the Conference in Hong Kong, GPJ secured a venue, 2) the parties negotiated the cost of the hotel rooms, meeting rooms, dinner and other amenities at the Hotel and GPJ's services, 3) L.E.K. informed GPJ that they were ready to contract, 4) GPJ subsequently sent L.E.K. a finalized price quotation (the purported contract) and 5) a representative of L.E.K. signed and delivered that document to GPJ.  Second, the complaint plausibly alleges that L.E.K. failed to perform its obligations under that contract because the purported contract required L.E.K. to make a deposit payment and pay a fee in the event of a cancellation, neither of which L.E.K. did.  Finally, the complaint states that GPJ suffered damages as a result of the breach in the amount of the unpaid cancellation fee ($962,763.60).

Although defendant vigorously contends that the complaint fails to plead an enforceable contract, the Court is underwhelmed.  First, accepting the complaint's factual allegations as true, the Court finds that the final "quotation" sent to L.E.K. was arguably specific enough and sufficiently tailored to L.E.K. to constitute an offer by GPJ to perform conference services and to book the Hotel for the Conference. See Liddell Brothers, Inc. v. Impact Recovery Systems, Inc., No. 15-cv-132226, 2016 WL 1091065, at *5 (D. Mass. Mar. 21, 2016)

(explaining that a price quotation can constitute an offer if "it is sufficiently specific and tailored for an individual offeree"). The complaint states that the finalized quotation was the result of negotiations by the parties and was tailored specifically to L.E.K. for a specific event. See Cocchi v. Morais Concrete Serv., Inc., 2015 Mass. App. Div. 49, 2015 WL 1515910, at *4 (Mass. Dist. Ct. Mar. 17, 2015) (finding that plaintiff's price quotation was an offer because the "quotation was in reference to a specific job, dealing with a specific customer."). Second, the Court finds that the complaint plausibly states that L.E.K. accepted plaintiff's offer by signing the quotation, thereby forming an enforceable contract.

The Court discounts L.E.K.'s challenge to the validity of the contract on the ground that the subject document was not signed by GPJ. Under Massachusetts,

> [a] written contract, signed by only one party, may be binding and enforceable even without the other party's signature if the other party manifests acceptance.

Haufler v. Zotos, 845 N.E.2d 322, 331 (Mass. 2006). To that end, L.E.K. signed the purported contract and GPJ allegedly manifested its acceptance by performing some services and attempting to enforce some of the provisions of the agreement.

Finally, L.E.K. avers that plaintiff has not alleged all of the material terms of the purported agreement but the Court is, again, unconvinced. To enter into a valid contract, "[i]t is

not required that all the terms of the agreement be precisely specified." Situation Mgmt, 724 N.E.2d at 703; see also APB Realty, Inc. v. Georgia-Pacific LLC, 889 F.3d 26, 29 (1st Cir. 2018) ("Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made.  So long as it is clear that the offeree is positively and unequivocally accepting the offer, regardless of whether the request is granted or not, a contract is formed." (citing 2 Williston on Contracts § 6:16 (4th ed.)).  Here, the purported contract provides the price for hotel rooms, meeting rooms, dinner, other amenities, GPJ's fees and the payment schedule.  Although the document does not appear to cover the price of offsite activity, the circumstances alleged in the complaint suggest that L.E.K.'s representative positively and unequivocally accepted GPJ's offer to use its services and to book the Hotel for the Conference.

    Having found that the factual allegations stated in the complaint permit the reasonable inference that a valid contract exists which L.E.K. breached by failing to make the requisite payments, the Court will deny defendant's motion to dismiss with respect to Count I.

### 2.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Massachusetts law, every contract is subject to an implied covenant of good faith and fair dealing. Famm Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009). The covenant protects the parties' expectations of the contract without creating rights or duties beyond the four corners of it. Id.

Here, the complaint states a claim for breach of the implied covenant of good faith and fair dealing for reasons similar to those outlined above. Under the purported contract (which the Court accepts as valid for the purpose of this motion to dismiss), GPJ expected to be paid a non-refundable deposit six months prior to the Conference and a cancellation fee in the event L.E.K. canceled it in the meantime. The complaint alleges that L.E.K. canceled the event less than six months prior to the scheduled Conference but made no payments, thereby depriving GPJ of the fruits of the contract. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237–38 (1st Cir. 2013) ("The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract" (internal quotation marks and citation omitted)). Accordingly, the Court will deny defendant's motion as to Count II, as well.

**ORDER**

For the foregoing reasons, defendant's motion to dismiss (Docket No. 7) is **DENIED**.

**So ordered.**

\s\ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 18, 2020