**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GEORGE P. JOHNSON COMPANY HONG KONG LTD.,<br>*Plaintiff*,<br>v.<br>L.E.K. CONSULTING LLC,<br>*Defendant*. | No. 20-cv-11269-NMG |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT L.E.K. CONSULTING LLC'S**
**MOTION FOR PROTECTIVE ORDER**

More than two years after filings its complaint in June 2020, and only about two weeks before the deadline to complete fact discovery, Plaintiff George P. Johnson Company Hong Kong Ltd. ("GPJ") served a notice of deposition for Attorney Shuba Satyaprasad, Group General Counsel for Defendant L.E.K. Consulting LLC ("L.E.K."). *See* Notice of Deposition (for appearance on Monday, August 15, 2022), attached as Exhibit A. L.E.K. is a global consulting firm based in Boston, Massachusetts, and Attorney Satyaprasad is its chief legal officer. She has represented L.E.K. as its counsel in this matter since the underlying dispute with GPJ first arose in November 2019.

The deposition of an opposing party's counsel is an "extreme measure," *Avid Tech., Inc. v. Media Gobbler, Inc.*, No. 14-cv-13746-PBS, 2016 U.S. Dist. LEXIS 20469, at *14 (D. Mass. Feb. 18, 2016) (denying plaintiff's motion to compel deposition of defendant's counsel), and only warranted in "extraordinary circumstances," *Fairchild*

*Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, No. 08-cv-158-P-H, 2009 U.S. Dist. LEXIS 19077, at *10, 13 (D. Me. Feb. 25, 2009) (denying plaintiff's motion to compel deposition of defendant's counsel, because "the need for extraordinary discovery has not been shown"); *see Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (citing *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)) (affirming district court's order allowing defendant's motion to quash plaintiff's notice of deposition to defendant's counsel) (emphasizing that efforts to obtain testimony from opposing counsel are "generally disfavored").

As the noticing party, GPJ bears the burden of showing that the deposition of Attorney Satyaprasad is necessary. *See Petrosyan v. Maserati N. Am., Inc.*, No. 19-cv-12425-DJC, 2020 U.S. Dist. LEXIS 250074, at *7 (D. Mass. Nov. 18, 2020); *Abiomed Inc. v. Macquet Cardiovascular LLC*, No. 1:16-cv-10914-FDS, 2017 U.S. Dist. LEXIS 234728, at *10 (D. Mass. Oct. 6, 2017). Here, however, GPJ has not even tried to satisfy that "difficult burden," *Ditech Fin. LLC v. SER Investments, Pool 1, LLC*, No. 2:15-cv-476-JCM-VCR, 2016 U.S. Dist. LEXIS 107589, at *7 (D. Nev. Aug. 15, 2016), and based on the record, it cannot.

Thus, this Court should issue a protective order to prevent GPJ from harassing Attorney Satyaprasad, imposing undue burdens on L.E.K., and trying to invade its attorney-client privilege. This Court should also require GPJ to pay L.E.K. for its attorneys' fees in connection with this motion.

## Background

This civil dispute arises from an alleged "contract" between GPJ and L.E.K. in connection with the Global Management Conference ("GMC") that L.E.K. planned to hold for its senior management (approximately 300 partners and managers from offices around the world) in Hong Kong in March 2020.

Due to the ongoing political unrest in Hong Kong—beginning in June 2019, continuing through November 2019, and involving massive demonstrations, general strikes, travel disruptions, and violent clashes between police and protestors—L.E.K. was forced to relocate its event to a safer, alternative venue.[1]

GPJ filed its complaint in state court on June 1, 2020, *see* D.E. 1-1, and L.E.K. removed the action to federal court, *see* D.E. 1. GPJ seeks nearly $1 million in damages—specifically, a "cancellation fee" that GPJ claims L.E.K. owes as "liquidated damages" under an alleged "contract," an undated, two-page document, titled "Event Cost Estimate and Variance Report," which GPJ never bothered to countersign or date. *See* D.E. 1-1 at Ex. D.

Discovery began on March 15, 2021, when the parties exchanged initial disclosures, *see* D.E. 20, and pursuant to this Court's recent scheduling order, fact discovery is set to end by August 19, 2022, *see* D.E. 42.

In its initial disclosures, L.E.K. identified Attorney Satyaprasad as a person with knowledge of the events at issue. *See* L.E.K. Initial Disclosure, at 2, attached as

[1] Initially, L.E.K. moved the GMC to Singapore, but after COVID emerged in January 2020, L.E.K moved the event to Los Angeles. Ultimately, as the pandemic spread to the United States, L.E.K. had to cancel the 2020 conference altogether.

Exhibit B. That was no surprise to GPJ: indeed, both GPJ and its counsel already knew, long before sued L.E.K. on June 1, 2020, that Attorney Satyaprasad represented L.E.K. in this matter.

Both parties have produced documents and responded to interrogatories. To date, L.E.K. has produced 1,136 documents (a total of 3,907 pages), including extensive internal and external communications as well as other documents about its GMC and interactions with GPJ. In addition, L.E.K. has provided a privilege log of all documents that it has withheld or redacted based on the attorney-client privilege or work-product protection. GPJ has not disputed the sufficiency of that log.

Both parties have also taken several depositions. To date, GPJ has deposed the following employees of L.E.K.:

> (1) Stuart Jackson, who served as L.E.K.'s Global Managing Partner in 2019 and led its initial decision in March 2019 to locate the GMC in Hong Kong and the firm's later decision in November 2019 to relocate that event to a safer, alternative location because of the violent protests in Hong Kong;
>
> (2) Eileen Coveney, a senior partner of L.E.K. and former member of its Global Leadership Team, who participated with Jackson in the decisions concerning the GMC; and
>
> (3) Jean Concannon, the long-time L.E.K. administrator who was primarily responsible for planning and managing the conference and worked directly with Rebecca Yuen, the head of GPJ's Hong Kong office.

It was Concannon who signed the alleged "contract" with GPJ, D.E. 1-1 at ¶ 14 and Ex. D, and sent the "cancellation letter" to Yuen, *see id.* at ¶ 23 and Ex. G.

In addition, GPJ has noticed a Rule 30(b)(6) deposition of L.E.K., identifying twenty-four broad topics for questioning, and that deposition is set to take place during the week of August 15, 2022.

On August 3, 2022, and without any warning or discussion between counsel, GPJ served on L.E.K. a notice of deposition for Attorney Satyaprasad, demanding that she appear on August 15, 2022. In an email later that same day, GPJ's counsel asserted: "in light of the privileges [L.E.K. is] claiming and the facts to which L.E.K.'s employees have testified, . . . GPJ must depose Ms. Satyaprasad." Email from D. Dwyer to A. Barsky (Aug. 3, 2022), attached as Exhibit C.

Although the deposition notice does not identify what specific information GPJ supposedly needs from Attorney Satyaprasad, it appears that GPJ is trying to obtain privileged information from L.E.K. concerning confidential communications with Attorney Satyaprasad, in her role as general counsel, in early November 2019, shortly before L.E.K. was forced to relocate its conference from Hong Kong to a safer, more suitable venue.

When L.E.K.'s Global Leadership Team met on November 6 and 7, 2019, it tasked Attorney Satyaprasad, as L.E.K.'s general counsel, with obtaining an "independent security assessment" of the ongoing violent protests in Hong Kong. *See* S. Jackson Dep. (July 14, 2022) at 143-46, 167-69, attached as Exhibit D. Accordingly, Attorney Satyaprasad engaged a third-party expert, Jesper Cullen of the Risk Advisory Group, and on November 8, 2019, by email to Attorney Satyaprasad, Cullen provided a brief, written report regarding the "outlook" for Hong Kong. Both Cullen's

email and the attached report appear on L.E.K.'s privilege log. Other than Attorney Satyaprasad, no one at L.E.K. interacted with Cullen or his firm. Attorney Satyaprasad then incorporated the contents of Cullen's report into the confidential, internal advice that she provided to L.E.K. about the risks of going forward in Hong Kong and its options for relocating. Her legal advice related directly to L.E.K.'s final decision on November 14, 2019, to move its conference.

**Argument**

"The harassing practice of deposing opposing counsel" has been widely condemned as "an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986). It is "not helpful to effective legal practice," and "undermin[es] attorney-client communications due to the risk that counsel may be compelled to testify at a deposition in a pending or future 'scorched earth" litigation." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Corp.*, 276 F.R.D. 376, 381 (D.D.C. 2011) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). Thus, "[a]ny time a deposition notice names an opposing party's counsel, current or former, as the deponent, red flags go up." *Abiomed Inc.*, 2017 U.S. Dist. LEXIS 234728, at *9. That is certainly the case here.

**I. This Court has "broad discretion" to issue a protective order barring the noticed deposition of Attorney Satyaprasad.**

"District courts have broad discretion in ruling on motions to quash subpoenas served upon opposing counsel." *RFF Fam. P'Ship, LP v. Link Dev., LLC*, 68 F. Supp.

3d 260, 261 (D. Mass. 2014) (Gorton, J.) (allowing plaintiff's motion to quash defendant's subpoena for testimony from plaintiff's counsel and noting "soliciting . . . testimony from opposing counsel is strongly disfavored") (citing *Bogosian*, 323 F.3d at 66); *see generally* Fed. R. Civ. P. 26(c)(1) ("A party . . . may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .").

"When analyzing such motions," whether styled as motions to quash subpoenas or for protective orders, courts consider "'whether (i) the subpoena [or notice] was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the [noticing] party's case.'" *Weinrich v. Brooks*, No. 21-cv-10496-NMG, 2022 U.S. Dist. LEXIS 126209, at *9 (D. Mass. Apr. 4, 2022) (allowing defendant's motion to quash plaintiff's notice of deposition to defendant's former in-house counsel) (quoting *Bogosian*, 323 F.3d at 66).

## II. Depositions of opposing counsel are "strongly disfavored."

"Although not strictly forbidden," any demand for testimony from opposing counsel, including by deposition, is "strongly disfavored." *RFF Fam. P'Ship, LP*, 68 F. Supp. 3d at 261 (citing *Bogosian*, 323 F.3d at 66); *see, e.g.*, *Bank of Am., N.A. v. Barnes Hill*, No. 16-cv-11583-DJC, 2018 U.S. Dist. Lexis 233146, at *4 (D. Mass. July 26, 2018) (allowing motion for protective order).

In a recent discovery decision, denying the plaintiff's motion to compel defendant's in-house counsel to sit for a deposition, Chief Judge Saylor summarized the many reasons that district courts strongly disfavor such litigation tactics.

> First, "[a]llowing depositions of opposing counsel, even if those depositions were limited to relevant and non-privileged information, may disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-81 (D.D.C. 2011) (citations omitted; collecting cases). In addition, "depositions of opposing counsel present a 'unique opportunity for harassment.'" *Id.* at 381. Another concern is that "counsel depositions carry the substantial potential of spawning litigation over collateral issues related to the assertion of privilege, scope, and relevancy." *Id.* at 382.

*Abiomed Inc.*, 2017 U.S. Dist. LEXIS 234728, at *9; *see also Emhart Indus., Inc. v. New Eng. Container Co.*, Nos. 06-cv-218 S, 11-cv-023 S, 2013 U.S. Dist. LEXIS 160976, at *27 (D.R.I. Nov. 12, 2013) ("[T]he practice of deposing opposing counsel has been described as a negative development in the area of litigation, and one that should be employed only in limited circumstances.").

## III. GPJ has not—and cannot—carry its burden to show that a deposition of Attorney Satyaprasad is necessary.

Because depositions of opposing counsel are "often used to harass the opposing party," *Navient Sols., LLC v. Law Offices of Jeffrey Lohman, P.C.*, No. 1:19-cv-461 (LMB/TCB), 2020 U.S. Dist. LEXIS 205509, at *15 (E.D. Va. Sept. 4, 2020) (allowing motion for protective order), the burden is always on the noticing party to establish that an attorney deposition is actually necessary, *see Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) ("Courts . . . presume that deposing opposing counsel

creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise."); *L.L. Bean, Inc. v. Bank of Am. Corp.*, No. 08-cv-177-PH, 2009 U.S. Dist. LEXIS 144212, at *20 (D. Me. Dec. 2, 2009). Specifically, the party seeking to take the deposition—in this case, GPJ—must make the following three-part showing:

> (1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.

*Abiomed, Inc.*, 2017 U.S. Dist. LEXIS 234728, at *10 (applying common test from *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)); *see Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 210 (D.P.R. 1998) (applying same test).

### A. GPJ has not exhausted all alternative means of discovery.

Under the strict standard for attorney depositions, which departs from the expansive discovery available in civil cases, courts routinely quash subpoenas to opposing counsel (or issue protective orders), when the noticing parties have failed to establish that no alternative means are available to conduct discovery. *See, e.g.*, *Brown v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-242-JL, 2022 U.S. Dist. LEXIS 6337, at *4 (D.N.H. Jan. 7, 2022) (allowing protective order where "plaintiffs have failed to demonstrate that they have pursued or legitimately ruled out alternative means for obtaining the information they seek for the deposition"); *Angela Adams Licensing, LLC*, 2012 U.S. Dist. LEXIS 30510, at *2 (allowing motion to quash, because noticing party "failed to make a persuasive argument that there are no other viable means to obtain the same evidence").

For example, in *Petrosyan v. Maserati North America, Inc.*, No. 19-cv-12425-DJC, 2020 U.S. Dist. LEXIS 250074 (D. Mass. Nov. 18, 2020), Judge Casper recently allowed the defendant's motion for a protective order barring the depositions of its counsel and awarded sanctions against plaintiff's counsel. The plaintiff failed to establish that he "should be allowed to take the depositions of [defendant's] trial and in-house counsel," because among other reasons, he failed to show that he was "unable to obtain the information he seeks," to the extent it was non-privileged and discoverable, "from other sources," such as a Rule 30(b)(6) deposition of the defendant. *Id.* at *7. Judge Casper found: "To the extent, [the plaintiff] complains regarding the sufficiency of [the defendant's] answers to interrogatories, he has already filed a motion to compel, which [the court has granted in part]." *Id.*

In this case, GPJ has not even tried—much less, exhausted—its alternative means to obtain whatever relevant, non-privileged information its seeks in discovery. Nearly 18 months ago on March 2, 2021, GPJ served its requests for documents and interrogatories, and L.E.K. has responded to them. Since then, and before serving its last-minute deposition notice for Attorney Satyaprasad, GPJ never served any supplemental requests for documents or interrogatories. Nor did GPJ move to compel further responses from L.E.K., including the production of any documents that L.E.K. has withheld (and logged) based on valid privilege claims. Moreover, GPJ has not yet taken the Rule 30(b)(6) deposition of L.E.K., which is planned for occur next week.

As noted above, it would appear GPJ is trying to obtain privileged information from L.E.K. concerning confidential communications with Attorney Satyaprasad, in

her role as general counsel, in early November 2019, shortly before L.E.K. decided to relocate its Global Management Conference from Hong Kong to a safer, more suitable venue. GPJ seems especially focused on the report that Attorney Satyaprasad obtained on November 8, 2019, from Cullen concerning the "outlook" for Hong Kong. But GPJ has never move to compel the production of any related documents, including the email from Cullen to Attorney Satyaprasad with the report, which L.E.K. identified on a privilege log that it provided on July 13, 2022.

Nor has GPJ ever sought third-party discovery from Cullen or his firm, even though in its initial disclosures, L.E.K. also identified Cullen as a person with knowledge about the "[p]olitical and public health conditions in Hong Kong" and "L.E.K.'s assessment of those conditions." L.E.K. Initial disclosures (dated Mar. 15, 2021) at 4, attached as Exhibit B. GPJ may have realized that such discovery would serve little purpose, because Cullen had no special access to any facts about what was occurring in the streets of Hong Kong, public events that were widely reported in the international media.

To state the obvious, GPJ is not entitled to invade L.E.K.'s privilege by asking about Attorney Satyaprasad about her analysis, advice, or other communications. Nor can GPJ use an attorney deposition to avoid filing a motion to compel or to make an end-run around valid privilege claims that L.E.K. has properly asserted.

**B. The requested testimony from Attorney Satyaprasad is not "crucial" to GPJ's claims.**

When a party seeks to depose opposing counsel, it not sufficient to assert that the requested testimony may be "relevant" to issues in the case. Rather, to warrant

an attorney deposition, which is presumed to impose undue burdens and risk potential harassment, the information sought must be "crucial," meaning it has "some greater importance to the action than merely being relevant." *Ditech Fin. LLC*, 2016 U.S. Dist. LEXIS 107589, at *7. "'Crucial' information includes information necessary for the survival of a claim or defense." *United States ex rel. Salomon v. Wolff*, No. 2:17-cv-05456-ES-CLW, 2022 U.S. Dist. LEXIS 61611, at *14-15 (D.N.J. Mar. 23, 2022) (quoting *Hanover Ins. Co. v. Terra S. Corp.*, No. 2:18-cv-00675-KJD-EJY, 2019 U.S. Dist. LEXIS 196807, at *6-7, 25-26 (D. Nev. Nov. 12, 2019)).

Here, because GPJ cannot show that it must depose Attorney Satyaprasad to obtain non-privileged evidence that is "crucial" to its contract claims, the notice for her deposition should be quashed. *See Angela Adams Licensing, LLC v. Wal-Mart Stores, Inc.*, No. 2:11-cv-05-GZS, 2012 U.S. Dist. LEXIS 30510, at *2 (D. Me. Mar. 7, 2012) (allowing motion to quash).

In particular, the circumstances and contents of Cullen's report to Attorney Satyaprasad (or Attorney Satyaprasad's confidential, internal communications with L.E.K.'s leadership about that report) are not "crucial" to GPJ's case. Stuart Jackson, the former Global Managing Partner, who led the internal decisions at L.E.K. to locate the conference in Hong Kong and then to relocate the event to a safer, alternative venue, testified that he could not recall whether L.E.K. had received any third-party report before it decided to cancel the conference and that the report was not "a factor either way." S. Jackson Dep. at 194, attached as Exhibit E. Coveney, who served with Jackson on the GLT, did not recall learning that a report had been

completed or what it may have revealed. *See* E. Coveney Dep. (Apr. 28, 2022) at 109-11, attached as Exhibit F. Similarly, Jean Concannon, the L.E.K. employee who signed the alleged "contract" with GPJ and later sent the "cancellation letter," never saw the report or discussed it with anyone. *See* J. Concannon Dep. (July 21, 2022) at 221-22, attached as Exhibit G.

Moreover, given the extremely volatile situation in Hong Kong at the time, any report drafted on November 8, 2019, was "old news" by November 14, 2019, when L.E.K. cancelled. Over the intervening weekend, one protester died, another was shot by police, and a man was lit on fire during violent street clashes. *See* Lily Kuo, "Hong Kong protests: man shot by police and burns victim in critical condition," THE GUARDIAN (Nov. 11, 2019) (reporting on "another day of protests of violent clashes between anti-government protestors and police that left more than 60 people injured").[2] On November 12, 2019, having seen the disturbing news from Hong Kong, Concannon wrote a short email to Jackson in which she observed: "Seems like it has been getting worse there – the Central Business District is a mess." LEK-GPJ002169, attached as Exhibit H.

**C. The noticed deposition will lead to time-consuming, costly, and burdensome collateral litigation, including privilege disputes.**

Even assuming GPJ could show that it has no other means to obtain *non-privileged* information that is crucial to its contract claims, the noticed deposition of Attorney Satyaprasad still "carr[ies] the substantial potential of spawning litigation

[2] *Available at* https://www.theguardian.com/world/2019/nov/11/hong-kong-police-shoot-demonstrator-during-morning-rush-hour .

over collateral issues related to assertion of privilege, scope, and relevant," and those issues will "only end up imposing additional pretrial delays and costs on both parties and burdens on the [C]ourt[] to resolve work-product and privilege objections." *Santiago v. City of Springfield*, No. 19-cv-11869-MGM, 2022 U.S. Dist. LEXIS 119566, at *11-12 (D. Mass. July 7, 2022) (denying motion to compel deposition of opposing party's counsel) (noting that avoiding collateral disputes is "chief among the concerns cited by federal courts" in refusing to permit attorney depositions); *see Brown*, 2022 U.S. Dist. LEXIS 6337, at *8 (granting defendant's motion to quash plaintiff's notice of deposition for defendant's in-house counsel and noting "potential overlaps between [counsel]'s legal and business roles").

There is "little doubt" that most, if not all, of Attorney Satyaprasad's knowledge of the dispute between her client, L.E.K., and GPJ is "protected by the attorney-client privilege or subject to work-product protection." *Santiago*, 2022 U.S. Dist. LEXIS 119566, at *11-12. As a result, the noticed deposition, if it were permitted by this Court to proceed, "would almost certainly run into claims of attorney-client privilege and work-product protection and argument about appropriate scope and relevance," and that likelihood is yet another "consideration [that] weighs against permitting [GPJ] to depose [her]." *Id.* It would make no difference if GPJ promised not to seek discovery or privileged information and to limit its questioning of Attorney Satyaprasad, because the deposition would "implicate privileged information" and, thus, disputes would be inevitable. *Angela Adams Licensing, LLC*, 2012 U.S. Dist. LEXIS 30510, at *5-6 (disregarding "the defendants' professed intention not to seek

discovery of any privileged information and to limit questions to the time period" when counsel was allegedly providing business advice).

## Conclusion

For the foregoing reasons, Defendant L.E.K. Consulting LLC respectfully requests that this Court issue a protective order barring the deposition of Attorney Shuba Satyaprasad, L.E.K.'s Group General Counsel, and a further order requiring Plaintiff George P. Johnson Company Hong Kong Ltd. to pay all attorneys' fees that L.E.K. has incurred (and may still incur) in connection with this motion.

Respectfully submitted,

**L.E.K. CONSULTING LLC**

By its attorneys,

*/s/ Daniel N. Marx*
Daniel N. Marx (BBO# 674523)
William W. Fick (BBO# 650562)
Amy Barsky (BBO# 601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*dmarx@fickmarx.com*
*wfick@fickmarx.com*
*abarsky@fickmarx.com*

Dated: August 11, 2022

## CERTIFICATE OF SERVICE

I, Daniel N. Marx, as counsel to Defendant L.E.K. Consulting, LLC, certify that on August 11, 2022, I caused the foregoing document to be served by ECF on the following:

Daniel J. Dwyer
Kristen G. Rossetti
VERRILL DANA LLP
One Federal Street, 20th Floor
Boston, MA 02109
*Counsel for Plaintiff George P. Johnson Company Hong Kong Ltd.*

*/s/ Daniel N. Marx*
Daniel N. Marx